## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WALTER E. BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-0414-CG-C** |
| | ) | |
| **THE BOEING COMPANY,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

This matter is before the Court on the motions of Defendants The Boeing Company ("Boeing"), Honeywell International, Inc. ("Honeywell"), Lockheed Martin Corporation ("Lockheed Martin"), and United Technologies Corporation ("UTC") for attorneys' fees and costs[1] (Docs. 155, 159, 161, 163), and Plaintiff's objections thereto (Docs. 164, 165, 166, 169).  For the reasons set forth herein, Boeing's, Lockheed Martin's, and UTC's motions will be **GRANTED IN PART and DENIED IN PART**, and Honeywell's motion will be **DENIED** in its entirety.

## I.    BACKGROUND

On June 22, 2012, Plaintiff commenced a lawsuit in this Court alleging certain damages from wrongful exposure to asbestos.  (Doc. 1 ¶¶ 5, 20.) Approximately two months later, Defendants moved for judgment on the pleadings, arguing that Plaintiff's action was time-barred under Alabama law.  (Docs. 108,

---

[1]    Boeing (Doc. 159) and UTC (Doc. 161) filed their motions under seal.

109, 111, 112, 116.)  Plaintiff then sought leave to voluntarily dismiss his case

without prejudice.  (Doc. 117.)  On September 13, 2012, this Court granted

Plaintiff's motion, but concluded that payment of certain of Defendants' attorneys'

fees was a proper and necessary condition for dismissal under Federal Rule of Civil

Procedure 41(a)(2).  (Doc. 154 at 5, hereinafter "the September 13 Order")

Specifically, the Court found that it was "appropriate for Plaintiff to reimburse

Defendants for the cost of researching Alabama's statute of limitations, briefing the

issue in support of its motions for judgment on the pleadings (Docs. 108, 112 & 150),

and responding to Plaintiff's motion for voluntary dismissal (Doc. 151)."  (Doc. 154

at 5.)  The Court set September 27, 2012 as the deadline for Defendants to submit

an accounting of their fees and expenses.  (Id. at 6.)  Subsequently, each Defendant

filed its own separate fee motion and supporting exhibits.  (Docs. 155, 159, 161,

163).

## II.   LEGAL STANDARD

To determine a reasonable fee, this Court begins by calculating the

"lodestar," which is the product of a reasonable hourly rate by the number of hours

reasonably expended.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also

Norman v. Hous. Auth. of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir.

1988).  A reasonable hourly rate is defined as "the prevailing market rate in the

relevant legal community for similar services by lawyers of reasonably comparable

skills, experience and reputation."  Norman, 836 F.2d at 1299 (citing Blum v.

Stenson, 465 U.S. 886, 895 (1984)).  In the instant case, the relevant legal

community is Mobile, Alabama.  See Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) ("[T]he 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." (citation and quotation marks omitted)).  The fee applicant bears the burden of proving, by direct or opinion evidence, that the requested rate is in line with prevailing market rates.  Norman, 836 F.2d at 1299.  In proving reasonable hours, "the general subject matter of the time expenditures ought to be set out with sufficient particularity so [the court] can assess the time claimed for each activity." Id. at 1303.  A party opposing a fee application should also submit objections and proof that are "specific and reasonably precise" concerning those hours that should be excluded.  Barnes, 168 F.3d at 428.

After calculating the lodestar amount, the court should then proceed with an analysis of whether any portion of the fee should be adjusted upwards or downwards.  See Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565-66 (1986); see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987); Hensley, 461 U.S. at 433-34.  "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce hours with an across-the-board cut."  Bivens v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008).  The Court is itself an expert, and where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations.  Norman, 836 F.2d at 1299.

3

In making the above determinations, the Court is guided by the twelve factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974),[2] abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 91-92 (1989).  See Hensley, 461 U.S. at 434 & n. 9; Dikeman v. Progressive Exp. Ins. Co., 312 F. App'x 168, 172 (11th Cir. 2008).  These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  These Johnson factors may "be considered in terms of their influence on the lodestar amount."  Norman, 836 F.2d at 1299.

## III.    REASONABLENESS OF THE FEES

The quantum of Defendants' fee requests vary significantly from $3,580 at the low end to more than $22,000 at the opposite extreme.  Plaintiff objects that the hours expended by all Defendants are excessive and that the hourly rates charged by Defendants' lawyers (except for Honeywell's) are unreasonable.  Plaintiff also

---

[2]   All cases decided by the former Fifth Circuit before October 1, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

requests that Lockheed Martin's recovery be reduced due to counsel's unprofessional conduct during a deposition. (Doc. 165 at 8-9.)

The Court will address each fee application in turn, however, it pauses to make one note at the outset: the September 13 Order was deliberately tailored to allow Defendants to recover certain, but not all, of the fees they had incurred. At the point of dismissal, Plaintiff's lawsuit had subsisted for all of 57 days, and formal discovery had not yet commenced.[3] Both of these facts weighed against fee shifting. See Wishneski v. Old Republic Ins. Co., 2006 WL 4764424, at *4 (M.D. Fla. Oct. 10, 2006) (no fees were awarded under Rule 41(d) when complaint was filed just one month prior, no discovery had taken place, nor had there been any substantial motions filed). Moreover, the issues briefed and presented to the Court during that fledgling period were not overly complex, which also weighed against fee shifting. However, because Plaintiff conceded that, at least in part, Defendants' statute of limitations defense motivated him to abandon his suit (Doc. 117 at 4), this Court exercised its broad equitable discretion under Rule 41(a)(2) to condition dismissal on Plaintiff's payment of reasonable, limited fees in order to "do justice between the parties." McCants v. Ford Motor Co., 781 F.2d 855, 857, 859 (11th Cir. 1986). Accordingly, as set forth in greater detail below, Plaintiff's objections to those instances where Defendants have endeavored to seek fees beyond the scope of the Court's September 13 Order are **SUSTAINED**.

---

[3]   In light of Plaintiff's declining health, the Court allowed Defendants to depose Plaintiff prior to the commencement of discovery. (Doc. 24)

A. <u>Boeing</u>

Boeing has requested $21,391.50 in fees and costs.  This amount is broken down and justified by an "affidavit of fees and costs" (Doc. 159-1), an itemization of $92.00 in court costs (Doc. 159-2), and a seven-page itemization of $21,299.50 of legal fees (Doc. 159-3).  The Court has also reviewed Boeing's reply to Plaintiff's objections.  (Doc. 173.)

Whereas the September 13 Order did not authorize the recoupment of court costs related to procuring a certificate of good standing, pro hac vice status, and Pacer downloads, the Court hereby strikes such costs of $92.00 before calculating the lodestar.  Additionally, the Court strikes as beyond the scope of Boeing's authorized recovery $289.00 of fees related to the drafting of corporate disclosures, $165.00 of fees related to preparing and filing pro hac vice applications, and $280.50 of fees relating to preparing and filing the Answer – which reflects 3.9 hours of work.  <u>See</u> Doc. 159-3 (July 13 entry for $25.50, July 16 entries for $51.00, $76.50, and $212.50, July 17 entry for $37.50, July 18 entries for $51.00, $178.50, $76.50, and $25.50).

*1. Reasonable Rate*

The Court first considers whether Boeing's rates are reasonable.  Boeing's fee itemization reflects three different rates:  $125.00/hour, $210.00/hour, and $255.00/hour.  In an affidavit, Boeing's lead counsel, Kay Baxter, Esq., declares the work performed by her firm, Swetman Baxter Massenburg, LLC, to have been "normal, reasonable, and routine" (Doc. 159-1 at 1), but such conclusory

declarations are insufficient to satisfy Boeing's burden of demonstrating the reasonableness of its attorneys' rates in Mobile, Alabama.[4]  Norman, 836 F.2d at 1304 (an affidavit attesting only to the reasonableness of the fee without mentioning prevailing market rates provides "little or no evidentiary support for an award.  In light of this failure, where Boeing's evidence is lacking, the Court will determine the applicable reasonable hourly rate based on its own experience.

Ms. Baxter's affidavit recounts her experience as a law firm partner who has been licensed since 1994.  While not explicitly stated anywhere in Boeing's submission, it is reasonable to assume that Ms. Baxter's billing rate is the highest of the three noted above.  Two hundred and fifty-five dollars an hour is a reasonable rate for a partner with 18 years of experience.  See Vision Bank v. Anderson, 2011 WL 2142786, at *3 (S.D. Ala. May 31, 2011) ($250/hour rate was reasonable for a partner with 15 years experience); Vision Bank v. FP Mgmt., LLC, 2012 WL 222951, at *3 (S.D. Ala. Jan. 25, 2012) (same); Wells Fargo Bank, N.A. v. Williamson, 2011 WL 382799, at *4 (S.D. Ala. Feb. 3, 2011) (same); Mitchell Co. v. Campus, 2009 WL 2567889, at *1, *17-18 (S.D. Ala. Aug. 18, 2009) (same).

---

[4]    In its reply, Boeing argues that the Court should accept its rates because "asbestos concerns and suits affect rates on a national level. . . . Suits of this type require specialized expertise and the companies involved utilize firms that charge national rates."  (Doc. 173 at 5)  Boeing has cited no evidence proving this point, and case law appears adverse to them on this point.  See Country Inns & Suites by Carlson, Inc. v. Interstate Props., LLC, 2009 WL 3535631, at *4 & nn.3-4 (Oct. 28, 2009).  While it may be true that asbestos suits require specialized expertise (though this Court passes no judgment on this issue), as stated previously, this suit barely made it out of the pleading stage, and as such, did not require highly specialized expertise.

However, Ms. Baxter's affidavit says nothing about the identity or experience of the associate that her firm billed out at $210/hour.  Accordingly, reasonable hours billed by Ms. Baxter's associate will be credited at a rate of $150/hour.  <u>See</u> <u>Anderson</u>, 2011 WL 2142786, at *3 ("In the past, this Court has awarded the rate of $150 per hour for associates' time when their expertise is indeterminate."); <u>Adams</u> <u>v. Austal, USA LLC</u>, 2009 WL 3261955, at *2 (S.D. Ala. Oct. 7, 2009) (awarding attorneys with "indeterminate expertise" $150/hour).

Similarly, $125/hour is not a reasonable rate for the services performed by Boeing's paralegal.  In this district, paralegal work is consistently charged at a rate of $75/hour.  <u>See, e.g.</u>, <u>Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC</u>, 2011 WL 1883009, at *6 (S.D. Ala. May 17, 2011) (reducing Mobile paralegal rate from $101/hour to $75/hour); <u>Trotter v. Columbia Sussex Corp.</u>, 2010 WL 383622, at *11 (S.D. Ala. Jan. 29, 2010) ("[J]udges in this district have repeatedly approved paralegal rates of $75 an hour."); <u>accord</u> <u>Wells Fargo Bank, N.A. v. Williamson</u>, 2011 WL 382799, at *5 (S.D. Ala. Feb. 3, 2011).

### 2.  *Hours Reasonably Expended*

Though Boeing did not provide the Court with a total number of hours, the Court has undertaken its own analysis, and has counted 94.4 total hours submitted. As for whether the remaining 90.5 hours were reasonably expended, the Court begins with the five entries reflecting work performed by Boeing's paralegal.  The Court has reviewed the paralegal's time entries, and the majority of the work performed was either beyond the scope of the Court's September 13 Order or was

Case 1:12-cv-00414-CG-C   Document 174   Filed 12/04/12   Page 9 of 26

work not typically performed by a lawyer. "The law is quite clear that 'purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.'" Johnson v. TMI Mgmt. Sys., Inc., 2012 WL 4435304, at *5 (S.D. Ala. Sept. 26, 2012) (quoting Missouri v. Jenkins ex rel. Agyei, 491 U.S. 274, 288 n.10 (1989)); see also Branch Banking & Trust Co. v. Imagine CBQ, LLC, 2012 WL 1987830, at *3 (S.D. Ala. June 4, 2012) ("As to reasonable paralegal fees, only time spent performing work traditionally performed by attorneys will be compensated."). Thus, the only compensable paralegal time is 0.8 hours. The remaining 2.6 hours of paralegal time is **STRICKEN**.

Of the remaining 87.1 hours, the Court must determine if associate hours of 44.2 and partner hours of 42.9 hours was reasonable. Plaintiff makes several arguments that Boeing's hours are excessive, and recommends that Boeing's hours should be reduced by two-thirds.

As a preliminary matter, the Court will determine whether the 20.1 hours Ms. Baxter spent reviewing Plaintiff's deposition for use in two motions is compensable. In its objection, Plaintiff asserts that the hours spent reviewing the deposition goes beyond the Court's September 13 Order. (Doc. 169 at 5) Boeing replies that Plaintiff's deposition had to be thoroughly reviewed to support a number of arguments advanced in the motion for voluntary dismissal and in reply to the motion for judgment on the pleadings. Boeing's time entries support this characterization. However, the Court was clear in its September 13 Order that it "believes that the limited discovery conducted to date (i.e., *Plaintiff's deposition*) will

be useful to both parties should this action be refiled in Connecticut." (Doc. 154 at 5 (emphasis added))  Any such benefit is no longer hypothetical, as Plaintiff has indeed commenced a new action in Connecticut.[5]  In spite of this, Plaintiff asserts in its reply brief that "the review . . . of multiple volumes of Plaintiff's deposition is not applicable to any other suit filed in any other state. . . . This review cost is one Boeing would not have incurred had this suit been filed in another state." (Doc. 173 at 3-4)  It defies reason that a review of the Plaintiff's deposition would not have been undertaken had this suit been filed in Connecticut first.

The Court recognizes that, in reviewing Plaintiff's deposition, Boeing's focus may have been different had it not had to contend with the statute of limitations issue.  However, this Court cannot grant Boeing its fees for reviewing the deposition transcript where the knowledge and familiarity with the testimony it undoubtedly gained will unquestionably aid its defense in Connecticut.  See Wolf v. Pac. Nat'l Bank, N.A., 2010 WL 1462298, at *4 (S.D. Fla. Mar. 18, 2010) ("It is well understood that an award of fees for purposes of Rule 41 should not award such fees when the work involved will prove necessary for the ultimate resolution of the second-filed action.").  Moreover, there is no way for the Court to determine from Boeing's time sheets how much time was spent compiling support for statute of limitations-related arguments and how much time was spent reading the transcript to uncover other

---

[5]  On October 10, 2012, Plaintiff filed a complaint in the Superior Court of Bridgeport County, Connecticut (Civ. No. 12-6030795-S), which defendants removed to federal court on October 22, 2012.  See Brown v. CBS Corp. et al., No. 3:12-cv-01495 (D. Conn.).

information.  Due to Boeing's vagueness and lack of compelling evidence in support of its request for fees for deposition review (in spite of the Court's clear order indicating that no such fees would be granted), none of Ms. Baxter's time spent analyzing Plaintiff's deposition transcript shall be allowed.

Of the 67 hours that remain, 22.8 hours were recorded by Ms. Baxter and 44.2 were recorded by her associate.  Many of counsel's entries are so vague as to frustrate the Court's ability to determine whether the tasks described are within the ambit of the September 13 Order.  Entries such as  "receipt of emails," "receipt of notice of joinder," "receipt of order," "office conference with paralegal regarding setting a telephone conference," "receipt of notices from Court," "plan and prepare for e-mail to defense counsel," and "plan and prepare for drafting motion" are problematic and cast doubt upon the reasonableness of the remaining entries. There are also a number of entries describing tasks devoted to "common interest issues" – which are not only vague, but also are much broader than just the Alabama statute of limitations' issue.  Rather than parsing the remaining time entries on a line-by-line basis to identify and exclude purely clerical work or work falling outside the scope of the Court's September 13 Order, the Court instead imposes a one-third across-the-board cut.  See Campbell v. Mark Hotel Sponsor, LLC, 2012 WL 4360011, at *2 (S.D.N.Y. Sept. 13, 2012) ("As a concession to the mortality of judges, the law does not require a line-item review.").  Accordingly, 7.6 partner hours and 14.7 associate hours are further stricken.

### 3. Lodestar

Based on the foregoing discussion, the lodestar for Boeing is $8,361.00:

| Timekeeper | Rate | Hours | Lodestar |
|---|---|---|---|
| Baxter: | $255/hour | 15.2 | $3,876.00 |
| Associate: | $150/hour | 29.5 | $4,425.00 |
| Paralegal: | $75/hour | 0.8 | $60.00 |
| **TOTAL:** | | | **$8,361.00** |

### B. Honeywell

Honeywell seeks $3,580.00 in fees and costs.  (Doc. 163 at 4)  Plaintiff has objected to both the merits and timeliness of Honeywell's motion.  (Doc. 164 at 1)  The Court first addresses the issue of timeliness.

Leaving no room for interpretation or confusion, this Court, in its September 13 Order, directed the parties to quantify their attorneys' fees and submit supporting evidence by a date certain, specifically September 27, 2012.  Honeywell filed its fee motion on September 28 – one day late – without explaining or even acknowledging its tardiness. (Doc. 163)  Only after Plaintiff objected that Honeywell's motion was untimely did Honeywell file a "Motion for Relief from Court's Prior Scheduling Order," requesting that the Court exercise its discretion and review Honeywell's motion on the merits, despite having been filed one day late.  (Doc. 172.)  In support of its prayer for relief, Honeywell says only that it was unable to complete the task of aggregating its fees within the 14-day schedule set by the Court and that it would be unduly prejudicial to deny its motion as untimely.  (Id.)

12

Pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, a party that is unable to adhere to a schedule set by the court has two options.  Before an act is to be done, the party charged with performance may ask the court for an extension. Fed. R. Civ. P. 6(b)(1)(A).  After the time allowed has expired, the party may move the court for a retroactive extension, which the court can grant "for good cause." Fed. R. Civ. P. 6(b)(1)(B).  However, "[a]bsent an affirmative showing . . . of excusable neglect according to Fed. R. Civ. P. 6(b)," a court does not abuse its discretion in denying a late motion on timeliness grounds.  See Clinkscales v. Chevron U.S.A., Inc., 831 F.2d 1565, 1568 (11th Cir. 1987).

Honeywell has not shown excusable neglect for its failure to timely file its fee motion or to timely request an extension of the September 27 deadline.  Honeywell says only that its "attorneys had problems completing their Motion, especially reviewing the Bills for Legal Services and Costs to be redacted and submitted in support of its Motion, and could not complete this task until 28 September 2012." (Doc. 172)  Honeywell has not attempted to argue that its unspecified "problems" constitute excusable neglect as its brief does not even acknowledge Rule 6(b) or the relevant standard.  In any event, to the extent that the Court understands Honeywell's explanation to be that its attorneys were so occupied by the press of other matters that they could not, in the 14 days provided, analyze the billing records of two attorneys as those records pertain to two motions filed within a month of each other,  it is well-settled that "[t]he fact that counsel has a busy practice does not establish 'excusable neglect' under Rule 6(b)(2)."  McLaughlin v.

City of LaGrange, 662 F.2d 1385, 1387 (11th Cir. 1981) (citation omitted); see also

Young v. City of Palm Bay, 385 F.3d 859, 864 (11th Cir. 2004) ("Counsel must take

responsibility for the obligations to which he committed and get the work done by

the deadline,").[6]

     Honeywell is in no way redeemed by the fact that its fee motion was filed only

one day after the September 27 deadline.  Galdames v. N & D Inv. Corp., 432 F.

App'x 801, 805 (11th Cir. 2011) (citing Clark v. Hous. Auth. of Alma, 971 F.2d 723,

727 (11th Cir. 1992)) ("A litigant's failure to file a motion for attorneys' fees within

the prescribed period can result in denial of that motion.")  Other courts in this

circuit have denied fee motions that were equally overdue.  See, e.g., Palmyra Park

Hosp., Inc. v. Phoebe Putney Mem. Hosp., Inc., 688 F. Supp. 2d 1356, 1362 (M.D.

Ga. 2010) (motion for fees denied because filed one day late).  Furthermore, the

Supreme Court has observed that

---

[6]    Given the clear holding of McLaughlin, it does not appear necessary to apply the
test set forth in Pioneer Investment Services Co. v. Brunswick Associates Limited
Partnership, 507 U.S. 380 (1993), which seeks to take account of "all relevant
circumstances surrounding the [late] party's omission," including the danger of
prejudice to the opposing party, "the length of the delay and its potential impact on
judicial proceedings, the reason for the delay, including whether it was within the
reasonable control of the movant, and whether the movant acted in good faith."  Id.
at 395.  Nonetheless, even if the Court were to apply the Pioneer factors (an
undertaking that neither Honeywell nor Plaintiff has requested), it would not find
that Honeywell acted with excusable neglect.  Though Plaintiff was not prejudiced
by the late filing, the Court finds Honeywell's proffered reason for delay vague and
wholly insufficient.  Accordingly, the Court cannot, on the record before it,
determine that Honeywell acted in good faith and was overcome by forces beyond its
control.

> [t]he notion that a filing deadline can be complied with by filing something after the deadline falls due is . . . a notion without principle. If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it.

United States v. Locke, 471 U.S. 84, 100-01 (1985).  The High Court's admonition in

Locke is doubly important considering that Honeywell sought to avail itself here of

a statute of limitations defense:

> Filing deadlines, like statute of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.

Id. at 101.[7]

Whereas Honeywell's motion was not timely filed, and whereas Honeywell

has not demonstrated excusable neglect for its failure to either abide by this Court's

order or seek permission to file out of time, its motion for attorneys' fees (Doc. 162)

is **DENIED**, and its motion to deem its fee motion timely (Doc. 172) is **DENIED**.

    C.  <u>Lockheed Martin</u>

Lockheed Martin seeks $22,101.80 in fees and costs.  Broken down, this

number encompasses $21,876.00 in attorney fees and $225.80 of court costs and

---

[7]   As the Seventh Circuit recently noted, even a delay of a few hours may preclude relief in the absence of the requisite showing of excusable neglect.  See Justice v. Town of Cicero, Ill., 682 F.3d 662, 664-65 (7th Cir. 2012) ("[I]t does not take a reference to *Cinderella* to show that midnight marks the end of one day and the start of another. . . . Courts used to say that a single day's delay can cost a litigant valuable rights.  With e-filing, one hour's or even a minute's delay can cost a litigant valuable rights."  (internal citation omitted)).

filing fees.  While the Court appreciates Lockheed Martin's specificity in breaking down its costs, the Court's September 13 Order did not authorize costs for printing, copying, PACER searches or expenses related to pro hac vice admission and certificates of good standing.  Therefore, Lockheed Martin's request for court costs of $225.80 is denied.

### 1. Reasonable Rate

Moving on to the question of reasonable rate, Lockheed Martin has submitted three declarations which set forth the hourly rates for the partners ($345 and $375), associate ($225), and litigation support clerks ($70) who worked on the case.  (Docs. 155-1 at 1-3, 155-2, 155-3.).  Plaintiff objects that these rates are unreasonable and submits that a maximum rate of $180 for attorney work is customary for asbestos defense work in Alabama.[8]  (Doc. 165 at 2.)

Laura Patricia Yee is a founder and partner of Glazier Yee LLP with 20 years experience.  Her billing rate is $375 per hour.  Brian T. Clark is a partner with 14 years of product liability experience.  His billing rate is $345/hour.  As an initial matter, the Court has reviewed the itemization of Ms. Yee's and Mr. Clark's fees,

---

[8]   In all of its objections, Plaintiff urges the Court to refer to Honeywell's attorney rates of $180/hour and $140/hour as the only evidence of reasonable rates for asbestos defense work in Alabama.  While counsel for Honeywell admitted in its submission that its rates are "heavily discounted" from their standard rates "in recognition of the high volume of asbestos litigation around the country" (Doc. 163 at 17), counsel's firm is located in Birmingham, Alabama, and therefore, it is not clear that such rates are reasonable in the relevant legal community – Mobile, Alabama. However, the Court is it itself an expert on the question, and has drawn upon its own knowledge and experience in setting the rates for all fee applicants. Norman, 836 F.2d at 1303.

and concludes that a single rate for all partner-level attorneys is appropriate. There is no indication that the work performed by Ms. Yee required greater experience or expertise than that of Mr. Clark.  Indeed, it appears that Mr. Clark performed the majority of the work, as he performed 38.1 hours of work while Ms. Yee performed only 4.5 hours.[9]  (See Doc. 155-1 at 5-6.).  Thus, the Court will consider what rate is appropriate for work performed by a partner with Mr. Clark's experience.  See Adams v. Austal USA LLC, 2010 WL 2496396, at *5 * n.10 (Jun. 16, 2010) (assessing attorney fees for partners at a single partner rate where there was no indication that work on the motion justified greater experience than the lower fee rate).

Mr. Clark's experience places him within a range of reasonable hourly rates of $200 to $250.[10]  Though Mr. Clark has represented that he has 14 years of product liability experience, he has been admitted to the bar for 16 years and has clerked for two judges.  Given the Court's experience and knowledge of other prior awards under similar circumstances, the Court finds that a rate of $250/hour is reasonable and appropriate for work performed by a partner with 16 years

---

[9]   Any upward difference in the final award of fees caused by this simplification will likely be insignificant.

[10]  Compare cases cited supra Part III.A.1. (approving $250/hour rate for a partner with 15 years experience) with Branch Banking, 2012 WL 1987830, at *2 (approving hourly rate of $200.00 and $217.50 for a partner with 14 years experience); Vision Bank v. Glynn, 2012 WL 685281, at *5 (S.D. Ala. Mar. 2, 2012) (approving $220/hour rate for an attorney with more than 12 years experience, and noting that "a reasonable rate for a partner with 12 years of experience is $225/hour").

experience and 14 years of product liability defense experience. See Lifeline

Pharms., LLC v. Hemophilia Infusion Managers, LLC, 2012 WL 2600181, at *3

(S.D. Ala. July 5, 2012) ("Recent awards almost without exception have utilized

hourly rates of $220 to $275 for partners . . . .").

 The remainder of the work was performed by Nina C. Irani, an associate who

has a little more than three years experience, and Song Kim and Caroline Caldwell,

who are litigation support clerks.  All three of these timekeepers worked exclusively

on Lockheed Martin's attorneys' fees motion.  (Doc. 155-1 at 7-8.)  While the Court

greatly appreciates the considerable effort Lockheed Martin devoted to preparing

and organizing its fee motion, that work is beyond the scope of the Court's

September 13 Order.[11]  Because the lodestars for Irani, Kim, and Caldwell are

---

[11]  In an effort to claim fees beyond the scope of the Court's September 13 Order, Defendant has relied on Simpleville Music v. Mizell, 511 F. Supp. 2d 1158 (M.D. Ala. 2007).  In Simpleville, the court granted the plaintiffs' motion for summary judgment that the defendant had violated the Copyright Act.  Id. at 1160.  Plaintiffs then moved pursuant to 17 U.S.C. § 505 for attorneys' fees and expenses.  Id. Section 505 "permits the trial court in its discretion to award a reasonable attorney's fee to the prevailing party in a copyright infringement action."  Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 832 (11th Cir. 1982). Thus, the court authorized payment of filing fees, copying costs, and electronic research fees.  In contrast, as described above, the Court's award of attorneys' fees pursuant to the September 13 Order was limited to specific fees, and the limitation on fees was well within this Court's broad discretion.  Farmaceutisk Laboratorium Ferring A/S v. Reid Rowell, Inc., 142 F.R.D. 179, 181 (N.D. Ga. 1991).  If a court grants a dismissal without prejudice under Rule 41(a)(2), it possesses broad discretion in determining what terms and conditions, if any, are appropriate to be imposed as a condition for dismissal.  Pontenberg v. Boston Scientific Corp., 252 F.3d 1253, 1256 (11th Cir. 2001); BMC-The Benchmark Mgmt. Co. v. Ceebraid-Signal Corp., 2007 WL 2126272, at *5 (N.D. Ga. Jul. 23, 2007) ("[S]ubstantial

irrelevant to the ultimate determination of Lockheed Martin's award, the Court declines to analyze whether these individuals' hourly rates and number of hours expended were reasonable.

### 2. *Partner Hours Reasonably Expended*

As discussed above, the lodestar is limited to the reasonable hours worked by Yee and Clark.  Partners Yee and Clark worked a total of 42.6 hours.  (Doc. 155-1 at 5-6.)  However, Lockheed Martin admits it only spent 31.9 hours on "tasks that the Court specifically deemed appropriate for reimbursement."  (Doc. 155 at 4.)  The remaining 10.7 hours were spent preparing an answer and disclosure statement, conferring with co-defendants regarding the joint report, and analyzing the scheduling order – tasks that Lockheed Martin represents it will need to duplicate when this case is refiled in Connecticut.  Upon careful review, the Court has confirmed that Lockheed Martin has supported its claim that it spent 31.9 hours on tasks within the scope of the Court's September 13 Order.  Plaintiff objects to the 31.9 hour total and submits that only 20 of Lockheed Martin's hours are reasonable.  As evidence, Plaintiff argues that Lockheed Martin claimed to have spent approximately six hours drafting its own motion for judgment on the pleadings, even though its motion was only four pages long and "virtually identical" to the motion that had been filed previously by Boeing.  (Doc. 165 at 5.)  Plaintiff also submits that Lockheed Martin claims to have spent more than two full days

---

discretion is vested in the district court to determine and implement a just resolution.").

working on the response to Plaintiff's motion for voluntary dismissal, even though billing records submitted by UTC reflect that it was responsible for drafting that brief.  (Id. at 6.)

The Court finds that Plaintiff's first objection is well taken.  A comparison of Boeing's motion (Doc. 108) to Lockheed Martin's (Doc. 112) reveals that Lockheed Martin's motion is a near replica of Boeing's.  Lockheed Martin raised no novel arguments, and it is difficult to believe that its attorneys spent 5.7 hours drafting a virtually identical motion, particularly when it appears that their work was commenced after Boeing's motion had been filed and served.  (See Doc. 155-1 at 5 (entry from 8/3/12)).  The Court declines to credit Lockheed Martin for duplicating Boeing's work.  See Barnes, 168 F.3d at 428 ("Fee applicants must exercise what the Supreme Court has termed billing judgment . . . . That means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours." (citations and internal marks omitted)).

As for Plaintiff's second objection, the Court does not agree that counsel's work on the motion for voluntary dismissal was necessarily duplicative.  "There is nothing inherently unreasonable about a client having multiple attorneys . . . if they are not unreasonably doing the same work . . . ."  Norman, 836 F.2d at 1302.  "An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation."  Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983).  It appears that counsel is claiming as many

20

as 19 hours of work spent preparing and revising the motion for judgment on the
pleadings, conferring with co-defendants, and analyzing grounds for opposing the
motion.  However, at least two of the time entries associated with work on the
motion for voluntary dismissal were block billed with other non-compensable tasks.

> Block billing is problematic because it hinders the fee opponent
> and the Court from determining whether the time spent on each
> individual task within the entry is reasonable. The problem is
> exacerbated when a block entry includes a facially noncompensable
> activity or provides insufficient information to make that
> determination. Thus, courts have approved across-the-board reductions
> in block-billed hours to offset the effects of block billing.  There may be
> . . . inefficiencies in requiring counsel to break down their daily
> activities more completely, but it is the fee proponent's burden to show
> the reasonableness of its request, and it has ample incentive and
> opportunity to cure the problem before it arises by adequate record-
> keeping.

Ceres Envtl. Servs., Inc., 2011 WL 1883009, at *4 (internal citation and footnote
omitted).  The Court has carefully considered the entries, and concludes that a
further cut of three hours is justified.

After a thorough review of Lockheed Martin's time sheets, the Court
concludes Lockheed Martin reasonably spent 23.2 hours on work within the scope
the Court's September 13 Order.

### 3.  Lodestar

The lodestar amount for Lockheed Martin is $5,800.00 ($250 multiplied by
23.2 hours).[12]

---

[12]  The Court has considered Plaintiff's arguments that the lodestar should be
further reduced due to counsel's unprofessional conduct during a deposition.  On

D. UTC

UTC requests $18,732.19 in fees and costs. With leave of the Court, it filed its motion and billing records under seal. (Docs. 156, 161) As such, the Court will try to limit any reference to the specific details of the billing records whenever possible.

UTC seeks reimbursement for fees and expenses associated with preparing and filing its Answer and application for pro hac vice admission on July 16, 2012 and July 17, 2012. For reasons previously articulated, the Court declines to grant those costs. The Court also concludes that costs billed as "Westlaw Computer Research" are beyond the scope of the Court's September 13 Order, and additionally, the entry is too vague to justify reimbursement. E.g., In re Adam Furniture Indus., Inc., 1993 WL 13004589, at *9 (Bankr. S.D. Ga. Dec. 10, 1993) (entry for "research costs" too vague to support reimbursement).

*1. Reasonable Rate*

UTC has submitted a summary of fees with rates ranging from $110/hour for RLM, $155/hour for CY, $195/hour for WLR, and $230/hour for NBJ. In support, UTC has also submitted the affidavit of W. Larkin Radney, IV, in which he avers that the "billing rates . . . are reasonable given the complexity of this litigation." (Doc. 161-2 at 3) Plaintiff objects that these rates are unreasonable, that no information is provided about the experience and skill level of the individuals

---

this record, the Court cannot say that counsel's conduct was so inappropriate that a further reduction in the lodestar is in order.

charging these hours, and that UTC provides no objective evidence that such rates are customarily charged for asbestos defense litigation.  (Doc. 166 at 4.)

UTC, as the party requesting fees, has not met its burden to supply the Court with specific and detailed evidence from which the Court can determine reasonable hourly rates for UTC's attorneys and paralegals.  Barnes, 168 F.3d at 427 (citing Norman, 836 F.2d at 1303).  UTC has failed to provide any information regarding the four timekeepers on this case.  Significantly, there is no clear evidence designating which initials correspond to a highly experienced partner as opposed to a paralegal as opposed to a junior attorney.  Mr. Radney merely avers in his affidavit that UTC's attorneys' fees are reasonable.  This is insufficient.  Gaines v. Dougherty Cnty Bd. of Educ., 775 F.2d 1565, 1571 (11th Cir. 1985) ("Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work.") (citing Blum v. Stenson, 465 U.S. 886 (1984))).

"Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee . . . ."  Norman, 836 F.2d at 1303.  The Court's docket sheet reveals that the attorneys to be noticed in this case on behalf of UTC are: Carter E. Strang, William Larkin Radney, IV, and Christopher Yearout.  The Court presumes that billing entries for "CY" refer to Christopher Yearout and that "WLR" refers to William Larkin Radney, IV.  However, the Court has no information before it by which it can identify NBJ or RLM and assess their experience and contributions.  Accordingly, fees requested for work purported to be performed by NBJ and RLM are **DENIED**.  Glynn, 2012 WL 685281, at *5-6

(declining to award fees where fee applicant provides no information about the timekeeper).

As for Messrs. Yearout and Radney, the Court is unable to determine the reasonableness of their rates because UTC's fee application is silent as to their expertise. Because both individuals are listed as "attorneys of record," the Court is aware of their status as attorneys, but cannot award fees beyond those appropriate for an associate with indeterminate experience. Therefore, both attorneys are awarded a $150/hour rate.

### 2. Hours Reasonably Expended

Considering the Court's prior analysis that fees incurred on 7/16/12 and 7/17/12 are non-reimbursable, the Court begins by analyzing Mr. Radney's 53.4 hours and Mr. Yearout's 32.5 hours. This work was completed over the course of twenty days in August.

In addition to objecting that UTC has included fees for work outside the scope of the Court's September 13 Order, Plaintiff submits that UTC has claimed too much time on correspondence regarding the relevant motions, and has submitted duplicative time for researching and briefing the relevant motions. Plaintiff asks this Court to reduce the hours claimed by more than half, which would result in an award of 20 hours for the reply brief (Doc. 150), and 10 hours for the response brief to the motion to dismiss (Doc. 151).

The Court agrees that included within UTC's submission is time spent on tasks unquestionably outside the scope of the Court's September 13 Order. For

instance, several entries describe UTC's efforts to coordinate with another co-defendant on a summary judgment motion.  There are also entries relating to drafting a motion for extended pages and email correspondence related thereto, entries relating to research on issues other than Alabama's statute of limitations, attorney correspondence relating to filing a joinder motion, drafting the joinder motion, and various clerical matters, such as gathering exhibits and reviewing of the court's briefing schedule.  These non-compensable entries are peppered throughout UTC's fee submission.

The Court finds it impossible in this case to determine the exact number of reasonably expended hours due to the fact that UTC's fee petition does not adequately separate compensable items from non-compensable items.  Moreover, due to the high number of hours billed over a short period of time, and because three other defendants were working on identical briefs, the Court is especially concerned that duplicative work has been billed.

Where an attorney has failed to exercise billing judgment, the court may do so for him by striking problematic entries or by reducing the hours requested by a percentage intended to substitute for the exercise of billing judgment.  Bivens, 548 F.3d at 1350.  This Court finds the latter approach appropriate here.  As the Supreme Court recently recognized:

> Trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time

<u>Fox v. Vice</u>, --- U .S. ---, 131 S. Ct. 2205, 2216 (2011); <u>Hensley</u>, 461 U.S. at 437 ("[A] request for attorney's fees should not result in a second major litigation.").

For the reasons cited herein, the Court finds that a reasonable amount of time expended by UTC in this case is 40 hours.

*3. UTC's Lodestar*

The lodestar amount for UTC is $6,000.00 ($150 multiplied by 40 hours).

## CONCLUSION

As stated herein, Boeing's, Lockheed Martin's, and UTC's motions are **GRANTED IN PART** and **DENIED IN PART**, and Honeywell's motion is **DENIED** in its entirety.  Attorney's fees are granted to the following defendants in the following amounts:

| | |
|---|---|
| Boeing: | **$8,361.00** |
| Lockheed Martin: | **$5,800.00** |
| UTC: | **$6,000.00** |
| **TOTAL** | **$20,161.00** |

**DONE and ORDERED** this 4th day of December, 2012.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE